



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRADFORD JOHNSON,<br>Plaintiff | : | |
| v. | : | No. 1:CV-00-0675 |
| SGT. JOSE RODRIGUEZ, OFFICER ELLING, OFFICER JACKSON AND SGT. STEWART,<br>Defendants | : | (Judge Rambo)<br>(Magistrate Judge Blewitt) |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Statement of the Case

This is a former inmate's civil rights claim brought pursuant to 42 U.S.C. §1983 alleging that while incarcerated at the State Correctional Institution at Rockview, he was exposed to second-hand tobacco smoke in violation of the Eighth Amendment and retaliated against for complaining of alleged smoking on his non-smoking cell block. The plaintiff is Bradford Johnson, an individual who was imprisoned at SCI-Rockview from August 1998 until his parole in September 2000.

The defendants are Sergeants Jose Rodriguez and Georgia Stewart, and Corrections Officers Roger Elling and Jody Jackson — all of whom worked at various times on the same housing block where Johnson was housed.

### Procedural History

Johnson filed this action in April 2000. The defendants answered the complaint on July 14, 2000. They now move for summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56 and submit this brief in support of their motion.

## Statement of Relevant Facts

Bradford Johnson was an inmate at the State Correctional Institution at Rockview from August 20, 1998 until his parole on September 20, 2000. MF ¶1.[1] Prior to his arrival at SCI-Rockview, Johnson had been screened for medical clearances and it had been noted that he was restricted to a bottom bunk only. MF ¶2. No documentation accompanied Johnson to Rockview indicating that he could not be exposed to tobacco smoke. MF ¶3. The inmate medical records of Johnson do not indicate that he ever complained to medical staff about the effects of environmental smoke or that he had been diagnosed with any illness resulting form exposure to environmental tobacco smoke. MF ¶4.

From his reception at Rockview until his parole, Johnson was housed in B-Block, which is divided into three wings, BA, BB and BC. During the 1999 time period, smoking was permitted in BB and BC. BA was designated a non-smoking area in October 1998. MF ¶5. Although BA was a designated non-smoking area, some inmates housed there did smoke when outside the block. MF ¶6. On occasion, staff who worked in BA and who happened to smoke would step just outside BA block where appropriate receptacles were located or would step into an area in the adjoining BB block which was not normally accessible by inmates to have a cigarette. MF ¶7.

The Unit Managers of BA during the 1999-2000 time period were not aware of any medical restriction placed on inmate Bradford Johnson with respect to exposure to environmental tobacco smoke and were never informed that there was such a medical restriction on him. MF ¶8. Each cell in BA had a window which opened to the outside which the inmate could open for

---

[1] References are to the Defendants' Statement of Material Facts submitted in accordance with Local Rule 56.1.

fresh air and ventilation. Additionally, weather permitting, the outside doors to BA are typically opened for fresh air and air circulators operate to maintain a continuous change of fresh air in the block. MF ¶9.

In September 1999, inmate Bradford Johnson filed an inmate grievance complaining of the alleged non-enforcement of the non-smoking rule of BA block. MF ¶10. The grievance did not identify any specific information such as the dates, times or staff on duty at the times of the alleged smoking. Johnson's lack of specificity made it nearly impossible to investigate the allegation. Consequently, the grievance was returned to Johnson and he was encouraged to bring timely bring the matter to the attention of unit staff so that the issues could be addressed in the future. MF ¶11.

Georgia Stewart is a Sergeant at SCI-Rockview who worked as a second-shift block Sergeant. MF ¶12. While working in BA block, Stewart has, on occasion, stepped just outside BA block and smoked a cigarette. She has not smoked within the BA block since it became a non-smoking block however. MF ¶13. Stewart is not aware of any restriction placed on Bradford Johnson while he was housed on BA with respect to exposure to any smoke. She also is not aware of Johnson ever telling her that he had such a restriction. MF ¶14. Stewart is not aware of any medical problem of Johnson caused by exposure to second-hand smoke. MF ¶15. Stewart has never knowingly permitted staff or inmates in BA to smoke and openly violate the non-smoking rules of the block. MF ¶16.

Jose Rodriguez is a Sergeant at SCI-Rockview who worked as a block Sergeant in B-block. MF ¶17. While working in BA block, Rodriguez has, on occasion, stepped just outside BA block and smoked a cigarette. He has not smoked within the BA block since it became a non-smoking block however. MF ¶18. Rodriguez is not aware of any restriction placed on

Bradford Johnson while he was housed on BA with respect to exposure to any smoke. He also is not aware of Johnson ever telling him that he had such a restriction. MF ¶19. Rodriguez is not aware of any medical problem of Johnson caused by exposure to second-hand smoke. MF ¶20. Rodriguez has never knowingly permitted staff or inmates in BA to smoke and openly violate the non-smoking rules of the block. MF ¶21. Rodriguez has never taken any action against Johnson because of his complaints about smoking and has never ordered to issue Johnson a misconduct on account of Johnson's complaints. MF ¶22.

Roger Elling is a Corrections Officer I at SCI-Rockview who has been assigned to BA block. MF ¶23. Elling quit smoking in November 1998. MF ¶24. Elling is not aware of any restriction placed on Bradford Johnson while he was housed on BA with respect to exposure to any smoke. He also is not aware of Johnson ever telling him that he had such a restriction. MF ¶25. Elling is not aware of any type of medical problem of inmate Bradford Johnson caused by exposure to second-hand smoke. MF ¶26. Elling never took any action against Johnson for complaining about smoking and did not smoke a cigar in the area of Johnson. MF ¶27.

Jody Jackson is a Corrections Officer I at SCI-Rockview who has been assigned to BA block. MF ¶28. While working on BA, Jackson has occasionally smoked either just outside BA block or in the adjacent BB block where smoking was permitted. Jackson quit smoking as of July 4, 2000. MF ¶29. Jackson is not aware of any restriction placed on Bradford Johnson while he was housed on BA with respect to exposure to any smoke. She also is not aware of Johnson ever telling him that he had such a restriction. MF ¶30. Jackson is not aware of any type of medical problem of inmate Bradford Johnson caused by exposure to second-hand smoke. F¶31.

Jackson never took any action against Johnson for complaining about smoking and did not retaliate against him in any way. MF ¶32.

**Questions Presented**

I. Whether the undisputed material facts fail to demonstrate an Eighth Amendment violation based upon exposure to environmental tobacco smoke?

II. Whether the undisputed material facts fail to demonstrate a retaliation claim based upon Johnson's reporting of alleged exposure to environmental tobacco smoke?

**ARGUMENT**

I. **The undisputed material facts fail to demonstrate an Eighth Amendment violation based upon exposure to environmental tobacco smoke.**

The undisputed material facts establish that the four defendants did not smoke in the vicinity of Johnson and therefore, no question of their liability should rise in this case. Even if Johnson's allegations in the complaint are given some credence, however, he still falls short. At best, he establishes a few isolated occurrences of staff and/or inmates smoking inside BA block in contravention of prison policy. Violation of internal prison policies do not, in themselves, establish constitutional violations, though. Instead, it is the parameters of the Eighth Amendment itself which establish a violation.

The Eighth Amendment, of course, prohibits punishments which are incompatible with the evolving standards of decency which mark the progress of a maturing society, Trop v. Dulles, 356 U.S. 86 (1958), and assures that inmates receive adequate food, clothing, shelter, protection and medical care. Estelle v. Gamble, 429 U.S. 97 (1976). A claim brought under the Eighth

Amendment has two components. First, the deprivation alleged by the inmate must be, objectively, "sufficiently serious," such that a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Second, the inmate must establish a subjective component, that the prison official acted with a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825 (1994).

The Supreme Court, in Helling v. McKinney, 509 U.S. 25 (1993), recognized that an inmate may be able to state a claim under the Eighth Amendment based upon the inmate's exposure to second-hand smoke. Helling involved a claim for prospective injunctive relief relating to exposure to environmental tobacco smoke. In that case, the Court reiterated that the conditions of an inmate's confinement violate the Eighth Amendment only where prison officials, with deliberate indifference, exposed inmates to levels of smoke that pose an unreasonable risk of serious damage to the inmate's future health. 509 U.S. at 35. The Court indicated that the inmate would need to demonstrate both the objective element of his claim, i.e., that he is exposed to unreasonably high levels of environmental tobacco smoke; and the subjective element, that prison officials were deliberately indifferent to the sufficiently serious risk to the inmate's health. 509 U.S. at 35-36.

Johnson can meet neither the Eighth Amendment's objective or subjective standard in this case, however. As to the first, the undisputed material facts establish that there was no basis for determining that Johnson had a serious medical need affected by possible exposure to environmental tobacco smoke. Nowhere in his medical records was it indicated that it was detrimental for him to be in the vicinity of any tobacco smoke. Nor do his medical records demonstrate that he ever complained to the medical department about exposure to environmental tobacco smoke. See Lidgett Declaration at ¶¶4-7. Accordingly, there is no basis upon which to

determine he had a sufficiently serious medical need implicated by exposure to environmental tobacco smoke.

Nor is there any basis upon which Johnson can establish a deliberate indifference, or sufficiently culpable state of mind of any of the defendants. Because there was no direction from the medical department that Johnson not be exposed to tobacco smoke and because Johnson never indicated to any of the defendants that he had a medical restriction placed on his exposure to environmental smoke, it is impossible to find that any of the defendants were deliberately indifferent to a sufficiently serious medical condition.

Further, even if there were a serious medical condition established, the evidence suggests the opposite of deliberate indifference on the part of prison officials. Johnson was housed in a non-smoking block. He had access to outside air at all times by opening his window and air circulators assured the constant exchange of fresh air in the block. And, on occasions when Johnson reported alleged smoking on the block, it was investigated. See Kerstetter Declaration at ¶¶12-13.

## II. The undisputed material facts fail to demonstrate a retaliation claim based upon Johnson's reporting of alleged exposure to environmental tobacco smoke.

Nor can Johnson establish liability against any of the defendants upon an alleged retaliation theory. Johnson alleges that as a result of his complaint that individuals within BA block were smoking, Sergeant Rodriguez told other officers of Johnson's complaint, had Johnson's cell searched, showed Johnson's complaint to other inmates, and had another officer issue a misconduct to Johnson. Johnson alleges that Officer Elling, on one occasion walked through the block and blew cigar smoke in Johnson's face. Finally, Johnson claimed that officer Jackson harassed him by "continuous remarks, block cards for no reason, singling myself out and

allowing other inmates to be out of their cell or visiting another inmate." There do not appear to be any allegations of retaliation against Sergeant Stewart in the Complaint.

In order to establish a claim for retaliation under 42 U.S.C. §1983, a plaintiff must show that he was engaged in a protected activity, that the Government responded in retaliation and that the protected activity was the cause of the Government's retaliation. <u>Wicks v. Shields</u>, 2001 WL 92301 (E. D. PA)(1/31/2001)(See Attachment A). An inmate's claim that he was retaliated against through verbal abuse or harassment, though, does not give rise to an actionable retaliation claim, though. <u>See</u> <u>Wicks</u>, <u>supra</u>. The rational of <u>Wicks</u> is self evident — there is no injury to the inmate which arises from the verbal abuse or harassment and hence no action giving rise to liability.

Yet, the majority of the alleged retaliation complained of by Johnson is in the nature of verbal harassment. For example, he claims that Sergeant Rodriguez told other officers of Johnson's complaint and showed Johnson's complaint to other inmates. Johnson claims that officer Jackson harassed him by "continuous remarks". None of these action even arguable give rise to an injury in the context which would support a retaliation claim. Nor is there any allegation in the complaint that Johnson suffered any actual injury from his allegation that Officer Elling, on one occasion walked through the block and blew cigar smoke in Johnson's face. If the event even occurred, which defendants dispute, it is of such a de minimus nature that it certainly does not rise to the level of a constitutional violation.

Nor, with the exception of the alleged misconduct, can Johnson establish any injury from any of the other alleged retaliatory actions. With respect to the allegation that Sergeant Rodriguez had another officer issue a misconduct in retaliation, the undisputed material facts demonstrate that this simply is not true. <u>See</u> Rodriguez Declaration at ¶11.

Notwithstanding the foregoing, Johnson has not filed a grievance concerning any alleged retaliatory actions against him and thereby, certainly did not exhaust any available administrative procedures concerning that issue. As such, Johnson is prohibited under the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997(a) from maintaining a claim based upon alleged retaliatory acts of the prison staff. See Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

## CONCLUSION

For the foregoing reason, judgment should be entered in favor of the defendants and against the plaintiff.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

BY: *[signature]*
**R. DOUGLAS SHERMAN**
Senior Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General

Office of Attorney General
15th Fl., Strawberry Square
Harrisburg, PA 17120
(717) 787-1179

**DATED:** February 7, 2001

2001 WL 92301  
(Cite as: 2001 WL 92301 (E.D.Pa.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Aaron WICKS, Plaintiff,  
v.  
Warden SHIELDS, et al., Defendants.

No. Civ.A. 00-3754.

Jan. 31, 2001.

MEMORANDUM AND ORDER

JOYNER, J.

*1 This is a prisoner civil rights case brought by Plaintiff Aaron Wicks ("Plaintiff") against multiple Defendants, including Sergeant Harris ("Harris"), an employee at the State Correctional Institution in Somerset, Pennsylvania ("S.C.I.Somerset") where Plaintiff is currently incarcerated. Presently before the Court is Harris's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons that follow, we will grant Harris's Motion.

BACKGROUND

All of the facts of this case stem from alleged mistreatment suffered by Plaintiff at the hands of various Defendants who work at or are connected to S.C.I. Somerset. Plaintiff's allegations with respect to Harris are quite brief. Plaintiff alleges that he reported several instances of misconduct by Harris to other prison officials and later testified against Harris at a misconduct hearing. According to Plaintiff, Harris thereafter retaliated against him for reporting her misconduct. Specifically, Plaintiff claims that Harris "came up to and interrupted a block representative meeting with commissary officials. [Harris] gave a speech where within it she called me names, humiliating and ridiculed [sic] me. She addressed herself to the block [representative] committee members as she spoke." (Compl. at 2). No other factual allegations are made by Plaintiff with respect to Harris.

DISCUSSION

I. Legal Standard

In considering a motion to dismiss, a court must accept as true all facts alleged in a complaint and view them in the light most favorable to the plaintiff. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief can be granted. See id. Moreover, a pro se complaint is held to a more liberal pleading standard than one drafted by an attorney. See, e.g., Gibbs v. Roman, 116 F .3d 83, 86 n. 6 (3d Cir.1997). Notwithstanding these standards, a court "need not credit a complaint's bald assertions or legal conclusions." See In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1429-30 (3d Cir.1997) (internal quotations omitted).

II. Retaliation Claim

Plaintiff argues that Harris violated his First and Eighth Amendment rights when she interrupted the block meeting and verbally harassed and ridiculed him. These actions were allegedly taken in retaliation for Plaintiff's prior complaints about Harris's misconduct. Thus, although not stated as such, Plaintiff is attempting to press a 42 U.S.C. § 1983 retaliation claim. In her Motion, Harris contends that Plaintiff has failed to show, as a matter of law, that he was retaliated against, and therefore, has failed to state a necessary element of his claim. We agree.

To state a claim for retaliation under 42 U.S.C. § 1983, a plaintiff must show (1) that he was engaged in protected activity; (2) that the Government responded in retaliation; and (3) that the protected activity was the cause of the Government's retaliation. See Anderson v. Davila, 125 F.3d 148, 161 (3d Cir.1997); McGrath v. Johnson, 67 F.Supp.2d 499, 512 (E.D.Pa.1999). Verbal abuse and harassment do not rise to the level of a constitutional violation. Rivera v. Chesney, No. CIV.A. 97-7547, 1998 WL 639255, at *5 (E.D.Pa. Sept. 17, 1998) ("Verbal harassment or threats by a prison officer to an inmate, without a reinforcing act, will not state a § 1983 claim,"); Allah v. Stachelek, No. CIV.A. 95-7593, 1998 WL 281930, at *14 (E. D.Pa. May 29, 1998); Wilson v. Horn, 971 F.Supp. 943, 947-48 (E.D.Pa.1997), aff'd, 142 F.3d 430 (3d Cir.1998). Even under the most charitable reading of Plaintiff's Complaint and briefings, Plaintiff has only alleged that Harris interrupted a group meeting and then ridiculed,

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Attachment A

verbally harassed, and humiliated him in front of the group. Such verbal harassment does not constitute a violation sufficient to state a claim for retaliation under § 1983. See Rivera, 1998 WL 639255, at *5; Allah, 1998 WL 281930, at * 14; Wilson, 971 F.Supp. at 948. As a result, we will grant Harris's Motion to Dismiss.

CONCLUSION

*2 An appropriate order follows.

ORDER

AND NOW, this day of January, 2001, upon consideration of Defendant Sergeant Harris's Motion to Dismiss (Document No. 24), and Plaintiff's response thereto, it is hereby ORDERED that Defendant's Motion is GRANTED and that Sergeant Harris is DISMISSED WITH PREJUDICE from this case.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRADFORD JOHNSON,<br>      Plaintiff | : <br> : <br> : |
| v. | :   No. 1:CV-00-0675 <br> : |
| SGT. JOSE RODRIGUEZ, OFFICER<br>ELLING, OFFICER JACKSON AND<br>SGT. STEWART,<br>      Defendants | :   (Judge Rambo) <br> : <br> :   (Magistrate Judge Blewitt) <br> : |

## CERTIFICATE OF SERVICE

I, R. DOUGLAS SHERMAN, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on February 7, 2001, I caused to be served a true and correct coy of the foregoing document entitled **BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** by depositing same in the United States Mail, first-class postage prepaid to the following:

Bradford Johnson
Liberty Management
1007 W. Lehigh Street
Philadelphia, PA 19133

                                                                              **R. DOUGLAS SHERMAN**
                                                                              **Senior Deputy Attorney General**

**DATE: February 7, 2001**